VAN NORTWICK, J.
The state appeals a final order dismissing on the authority of State v. Manucy, 417 So.2d 1021 (Fla. 1st DCA 1982), the charges of grand theft and conspiracy to commit grand theft with which Aaron S. Gordon, Appellee, had been charged by information. Because we conclude that the holding in Manucy is limited to cases of theft by fraud, we reverse.
As provided in the probable cause affidavit, on May 17, 2004, an undercover officer contacted Appellee and Appellee made arrangements to sell an ounce of cannabis to the officer for $330. The detective delivered the $330 in cash to Ap-pellee while Appellee sat in the officer’s *43 vehicle. Rather than deliver the drugs, however, Appellee exited the vehicle and drove off with two others, who were also named as co-defendants. Appellee later confessed to planning to steal the money from the undercover officer, whom Appel-lee believed was a “stupid little college boy,” and to dividing the $330 among the three co-defendants.
Appellee was charged by information with one count of grand theft pursuant to section 812.014(2)(e)l, Florida Statutes (2004) and one count of conspiracy to commit grand theft pursuant to section 777.04, Florida Statutes. Appellee filed a motion to dismiss, arguing that under Manucy the undisputed facts do not establish a prima facie case against him. Following a hearing, the trial court granted the motion to dismiss, setting forth its reasoning, as follows:
The Defendant submits State v. Manucy, 417 So.2d 1021 (Fla. 1st DCA 1982) in support of his argument. That case involved a defendant who sold an undercover agent one (1) pound of white powder which turned out to be 100% li-docaine contrary to the defendant’s representation that it was actually cocaine. The State sought to prosecute the defendant for grand theft. The Court specifically held in Manucy that the theft statute was not applicable reasoning that “[i]t is not reasonable to expect to receive contraband, even when that has been promised, and it is not reasonable to expect the criminal laws of the State to enforce quality control in illegal drug transactions.” Manucy, 417 So.2d at 1021.
The State has not cited any case law in support of its position that Manucy is not applicable to the facts of this case. Thus, it appears that Manucy is the law that currently exists by pronouncement of the First District Court of Appeal which I am bound to follow. See Pardo v. State, 596 So.2d 665 (Fla.1992). Accordingly I find that even taking the facts in a light most favorable to the State there does not exist a prima facie case of guilt against the Defendant to support the charges of grand theft and conspiracy to commit grand theft.
This appeal ensued.
In Manucy, police officers purchased from the co-defendants what they believed, and what was represented by the co-defendants to be, one pound of white cocaine powder. The powder was later found to be lidocaine, not a controlled substance. The state charged the co-defendants with grand theft by fraud in violation of section 812.014, Florida Statutes (1979). Id. at 1022. The prosecution was based on a consumer fraud theory in that the officers were led to believe that they were purchasing cocaine, but were sold lidocaine. Id. This court held that “the facts do not state a prima facie case of consumer fraud under the grand theft statute.” Id. The court explained:
The theft statute in this situation is meant to vindicate the reasonable expectations of the consumer. It is not reasonable to expect to receive contraband, even when that is what has been promised, and it is not reasonable to expect the criminal laws of the state to enforce quality control in illegal drug transactions. Where the buyer consents to part with his money on the assumption that he is to receive cocaine, the “contract” between buyer and seller is already voided by the illegal and unenforceable nature of the proposed transaction.

Id.

Given the broad language in Manucy, we understand how the trial court here reasonably concluded that, since contraband was involved, the “contract” was void and, as in Manucy, the transaction could not support a charge of grand theft. We read Manucy more narrowly, however. The charge in Manucy was based upon a *44 consumer fraud theory and the Manucy court concluded that the criminal laws do not “enforce quality control in illegal drug transactions.” Id.[1] By comparison, the instant case does not involve consumer fraud, but the direct theft of $330 in cash. As the facts set forth in the probable cause affidavit make clear, Appellee absconded with the $330 and later confessed that it had been his plan and intent to steal the money and that he intended to appropriate it to his own use and to the use of his co-defendants. The fact that the money was provided to Appellee to purchase drugs and that Appellee may not have known the individual was an undercover police officer in no way insulates him from the provisions of the theft statute. See § 812.014(1), Fla. Stat. (2004). Furthermore, the transaction here was not unlawful because the provisions of section 893.13(l)-(8), Florida Statutes (2004), prohibiting the sale or purchase of a controlled substance, do not apply to “law enforcement officers for bona fide law enforcement purposes in the course of an active criminal investigation.” § 893.13(9)(h), Fla. Stat. (2004).[2] Thus, Manucy is not controlling.
Accordingly, we REVERSE and REMAND for further proceedings consistent with this opinion.
BENTON and PADOVANO, JJ., concur.

. We note that section 817.563, Florida Statutes (2004), makes it “unlawful for any person to agree, consent or in any manner offer to unlawfully sell to any person a controlled substance named or described in s. 893.03 and then sell to such person any other substance in lieu of such controlled substance.” See State v. Bussey, 463 So.2d 1141 (Fla.1985). Section 817.563 was not effective at the time Manucy was decided. Ch. 81-53, § 1, at 116, Laws of Fla.

. While this section (formerly numbered 893.13(4)(b)5) and section 893.09(5) (immunizing officers enforcing Chapter 893 from prosecution for crimes defined in the chapter) were in effect at the time of Manucy, neither was addressed by the Manucy court.